1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHARLES DANIEL CARL,

11             Petitioner,                No. CIV S-04-1796 FCD DAD P

12        vs.

13   WARDEN M. KNOWLES, et al.,

14             Respondents.               FINDINGS & RECOMMENDATIONS

15   _____/

16             Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner alleges that the decision of the California

18   Board of Parole Hearings (hereinafter BPT or Board) to deny him parole at a hearing held on

19   September 24, 2003 violated his right to due process, breached his plea agreement, and has

20   resulted in a violation of his Eighth Amendment right to be free from cruel and unusual

21   punishment.  He also alleges that his Fourteenth Amendment rights were violated because the

22   Board disregarded regulations ensuring fair suitability hearings and instead operated under a

23   policy requiring that all murderers be found unsuitable for parole.  Upon careful consideration of

24   the record and the applicable law, the undersigned will recommend that petitioner's application

25   for habeas corpus relief be denied.

26   /////

1

1          PROCEDURAL BACKGROUND

2          On approximately October 8, 1982, petitioner pled guilty to first degree murder

3  and admitted a firearm use allegation.  (Answer, Ex. C.)  On December 1, 1982, petitioner was

4  sentenced to 27 years to life for these crimes.  (Id.; Pet., Ex. A.)  On June 13, 1984, petitioner

5  was sentenced in Kings County Superior Court to five years and four months as a result of a

6  conviction on the charge of possession of heroin for sale.  (Pet., Ex. A.)  This sentence imposed

7  in 1984 was ordered to be served consecutively to petitioner's sentence of 27 years to life for the

8  first degree murder.   As a result of all of these proceedings, petitioner was sentenced to 32 years

9  and 4 months to life in state prison.  (Answer, Ex. A, Ex. B at page marked "1.")

10         On September 24, 2003, petitioner appeared before a Board panel for his second

11  parole suitability hearing.  (Answer, Ex. B at 1.)  At that time, petitioner had served

12  approximately 21 years in prison.  Petitioner was present at the hearing and was also represented

13  by counsel.  (Id. at 2.)  Counsel stipulated that petitioner's procedural rights had been met.  (Id. at

14  5.)  Petitioner made an opening statement to the Board.  (Id. at 7-8.)  The Board found petitioner

15  unsuitable for parole at that time and deferred his next parole hearing for a period of  two years.

16  (Id. at 37.)

17         Petitioner challenged the Board's September 24, 2003 decision in a petition for

18  writ of habeas corpus filed in the Kern County Superior Court.  (Answer, Ex. C.)  On April 5,

19  2004, that petition was denied on the grounds that petitioner had failed to "state a prima facie

20  case for relief" and had failed to "state facts sufficient to warrant issuance of a writ of habeas

21  corpus."  (Id.)  On April 19, 2004, petitioner filed a petition for writ of habeas corpus in the

22  California Court of Appeal for the Fifth Appellate District.  (Answer, Ex. D.)  That petition was

23  denied without prejudice for failure to exhaust administrative and superior court remedies.  (Id.)

24  Petitioner subsequently filed a petition for review in the California Supreme Court.  (Answer, Ex.

25  E.)  That petition was summarily denied.  (Id.)

26  /////

2

ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues <u>de novo</u>. <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

<u>See also</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment. <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a

3

1  federal habeas court independently reviews the record to determine whether habeas corpus relief

2  is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

3  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

4  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

5  AEDPA's deferential standard does not apply and a federal habeas court must review the claim

6  de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

7  1167 (9th Cir. 2002).

8  II.  Petitioner's Claims

9            Petitioner claims that: (1) state law gives him a due process interest in a

10  "presumptive parole release date;" (2) the Board failed to demonstrate that his release would

11  pose an unreasonable risk to public safety; (3) the Board failed to "provide evidence" that he was

12  not suitable for parole; (4) the Board improperly failed to "set a base term" for his sentence; (5)

13  petitioner's sentence is disproportionate to the "uniform" term prescribed by state law; (6) his

14  continued incarceration constitutes a breach of his plea agreement; and (7) he was found

15  unsuitable for parole based on an illegal "no parole policy."  (Points and Authorities attached to

16  Petition (P&A) at 1.)

17        A.  Background

18            The Board commenced its September 24, 2003 decision finding petitioner

19  unsuitable for parole by stating that the panel had reviewed "all information received from the

20  public" and had concluded that "the prisoner is not suitable for parole and would pose an

21  unreasonable risk of danger to society or a threat to public safety if released from prison."

22  (Answer, Ex. B at 33.)  The phrases "unreasonable risk of danger to society" and "a threat to

23  public safety" are derived from § 3041(b) of the California Penal Code and § 2281(a) of Title 15

24  of the California Code of Regulations.  Pursuant to the Penal Code provision,

25            [t]he panel or board shall set a release date unless it determines that
             the gravity of the current convicted offense or offenses, or the
26            timing and gravity of current or past convicted offense or offenses,

4

1          is such that consideration of the public safety requires a more
       lengthy period of incarceration for this individual, and that a parole
2          date, therefore, cannot be fixed at this meeting.

3   Cal. Penal Code § 3041(b).

4         The state regulation that governs parole suitability findings for life prisoners states

5   as follows with regard to the statutory requirement of California Penal Code § 3041(b):

6   "Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied

7   parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to

8   society if released from prison." Cal. Code Regs. tit. 15, § 2281(a). The same regulation

9   requires the Board to consider all relevant, reliable information available regarding

10         the circumstances of the prisoner's social history; past and present
       mental state; past criminal history, including involvement in other
11         criminal misconduct which is reliably documented; the base and
       other commitment offenses, including behavior before, during and
12         after the crime; past and present attitude toward the crime; any
       conditions of treatment or control, including the use of special
13         conditions under which the prisoner may safely be released to the
       community; and any other information which bears on the
14         prisoner's suitability for release.

15  Cal. Code Regs. tit. 15, § 2281(b).

16        The regulation identifies circumstances that tend to show suitability or

17  unsuitability for release. Id., § 2281(c) & (d). The following circumstances tend to show that a

18  prisoner is suitable for release: the prisoner has no juvenile record of assaulting others or

19  committing crimes with a potential of personal harm to victims; the prisoner has experienced

20  reasonably stable relationships with others; the prisoner has performed acts that tend to indicate

21  the presence of remorse or has given indications that he understands the nature and magnitude of

22  his offense; the prisoner committed his crime as the result of significant stress in his life; the

23  prisoner's criminal behavior resulted from having been victimized by battered women syndrome;

24  the prisoner lacks a significant history of violent crime; the prisoner's present age reduces the

25  probability of recidivism; the prisoner has made realistic plans for release or has developed

26  /////

1    marketable skills that can be put to use upon release; institutional activities indicate an enhanced

2    ability to function within the law upon release.  Id., § 2281(d).

3              The following circumstances tend to indicate unsuitability for release: the prisoner

4    committed the offense in an especially heinous, atrocious, or cruel manner; the prisoner had a

5    previous record of violence; the prisoner has an unstable social history; the prisoner's crime was

6    a sadistic sexual offense; the prisoner had a lengthy history of severe mental problems related to

7    the offense; the prisoner has engaged in serious misconduct in prison.  Id., § 2281(c).  Factors to

8    consider in deciding whether the prisoner's offense was committed in an especially heinous,

9    atrocious, or cruel manner include: multiple victims were attacked, injured, or killed in the same

10   or separate incidents; the offense was carried out in a dispassionate and calculated manner, such

11   as an execution-style murder; the victim was abused, defiled or mutilated during or after the

12   offense; the offense was carried out in a manner that demonstrated an exceptionally callous

13   disregard for human suffering; the motive for the crime is inexplicable or very trivial in relation

14   to the offense.  Cal. Code Regs., tit. 15, § 2281(c)(1)(A) - (E).  Under current California law, the

15   Board is apparently not required to refer to sentencing matrixes or compare the prisoner's crime

16   to others of the same type in deciding whether the crime was especially cruel or exceptionally

17   callous but may find the crime especially cruel or exceptionally callous if there was violence or

18   viciousness beyond what was "minimally necessary" for a conviction.  In re Dannenberg, 34 Cal.

19   4th 1061, 1095 (2005).

20             In addressing the factors it considered in reaching its 2003 decision that petitioner

21   was unsuitable for parole, the Board stated as follows:

22             PRESIDING COMMISSIONER RISEN:

23             The Panel reviewed all information received from the public and
              relied on the following circumstances in concluding the prisoner is
24             not suitable for parole and would pose an unreasonable risk of
              danger to society or a threat to public safety if released from
25             prison.  The offense was carried out in an especially violent and
              brutal manner.  The offense was carried out in a dispassionate
26             manner and the offense was carried out in a manner which

6

demonstrates a disregard for human life.  These conclusions are drawn from the Statement of Facts wherein the prisoner and a female companion, Ms. Keener, went to a farm labor camp with two codefendants for the purpose of Ms. Keener to perform acts of prostitution.  Ms. Keener had sexual intercourse with the victim and as she was putting on her clothes after the sexual act the prisoner and his two crime partners entered the trailer.  They were armed at the time.  The victim was ordered into the bathroom. Inmate Carl went into the bathroom and was preparing to tie up the victim when Denney, who had a pistol in his hand, had it at the victim's face and he fired a round into the victim, killing him.  And that was Denney who fired the fatal shot.  The prisoner has an escalating pattern of criminal conduct and violence.  He has failed to profit from society's previous attempts to correct his criminality. Such attempts include adult probation, county jail and juvenile probation.  He has an unstable social history and prior criminality which includes arrests and convictions for possession of a deadly weapon, petty theft and he has had a lifelong drug use problem starting at age 14.  He was committed to the civil addiction – He had a civil addiction commitment in 1980 and was on parole from that at the time of the commitment offense.  The prisoner has not sufficiently participated in beneficial self-help.  He has only participated in NA.  He needs other substance abuse and self-help programs such as Breaking Barriers, Anger Management, and there are others available.  Parole plans.  The prisoner does not have acceptable employment plans.  He has realistic residential plans. We have no written offer of employment and we need a written confirmation of the offer of employment.  The Panel makes the following findings:  The prisoner needs to continue to participate in self-help in order to face, discuss, understand and cope with stress in a nondestructive manner.  Until progress is made, the prisoner continues to be unpredictable and a threat to others.  The prisoner's gains are recent and he must demonstrate an ability to maintain these gains over an extended period of time.  He should be commended for receiving no 115s since 1995; for obtaining vocational certificates in meat cutting and silkscreen; for being active in Narcotics Anonymous, he was the sergeant-at-arms.  He's currently enrolled in mill and cabinet and has completed electrical. However, these positive aspects of his behavior do not outweigh the factors of unsuitability.  In a separate decision the hearing Panel finds that it is not reasonable to expect that parole would be granted at a hearing during the following two years.  The specific reasons for these findings are as follows:  The prisoner committed the offense in an especially violent manner.  The offense was carried out in a manner which demonstrates a disregard for human life.  Specifically, the prisoner and a female companion went to a farm labor camp in the Lost Hills area of Kern County along with two crime partners.  The female was a prostitute and was going to turn tricks.  Ms. Keener had sexual intercourse with the victim in this case, Juan Morones, M-O-R-O-N-E-S.  She was putting on her clothes when inmate Carl and the two crime partners entered the

1    trailer.  They were armed.  They ordered the victim into the
     bathroom.  Carl went – was in the bathroom with Denney.  Carl
2    was attempting to tie up the victim.  During the process Carl shot
     the victim and killed him.  I'm sorry.  Denney shot the victim and
3    killed him.  Sorry about that.  The prisoner has not completed the
     necessary programming which is essential to his adjustment and
4    needs additional time to gain such programming.  He has not
     sufficiently participated in substance abuse and other self-help
5    programs.  Therefore, a longer period of observation and
     evaluation of the prisoner is required before the Board should find
6    that the prisoner is suitable for parole.  The Panel recommends that
     he remain disciplinary-free and continue to participate in self-help,
7    in substance abuse programs as they become available.  Any
     comments?

8
     DEPUTY COMMISSIONER WOLK:
9
     No, just keep doing what you're doing.  Just do it for a little bit
10   longer and get some viable job offers.

11   (Answer, Ex. B at 33-36.)

12           B.  Due Process

13           Petitioner claims that the failure of the Board to find him suitable for parole at the

14   parole suitability hearing held on September 24, 2003 deprived him of his liberty without due

15   process of law.  (P&A at 6-23.)  The Kern County Superior Court denied petitioner relief on his

16   due process claim, finding that petitioner had failed to state a prima facie case for relief and had

17   failed to state facts sufficient to warrant issuance of a writ of habeas corpus.  (Answer, Ex. C.)

18   For the reasons explained below, the Superior Court's rejection of petitioner's due process claim

19   is not contrary to or an unreasonable application of federal law and should not be set aside.

20           The Due Process Clause of the Fourteenth Amendment prohibits state action that

21   deprives a person of life, liberty, or property without due process of law.  A person alleging due

22   process violations must first demonstrate that he was deprived of a liberty or property interest

23   protected by the Due Process Clause and then show that the procedures attendant upon the

24   deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,

25   490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).

26   /////

                                                     8

1    A protected liberty interest may arise from either the Due Process Clause of the

2    United States Constitution or state laws.  Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

3    The United States Constitution does not, of its own force, create a protected liberty interest in a

4    parole date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).

5    However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that

6    parole release will be granted' when or unless certain designated findings are made, and thereby

7    gives rise to a constitutional liberty interest."  McQuillion, 306 F.3d at 901 (quoting Greenholtz

8    v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)).  California's parole scheme gives rise to a

9    cognizable liberty interest in release on parole, even for prisoners who have not already been

10   granted a parole date.  Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006);

11   Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903.  Accordingly,

12   this court must examine whether the deprivation of petitioner's liberty interest in this case lacked

13   adequate procedural protections and therefore violated due process.

14          Because "parole-related decisions are not part of the criminal prosecution, the full

15   panoply of rights due a defendant in such a proceeding is not constitutionally mandated."

16   Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and

17   citation omitted).  Where, as here, parole statutes give rise to a protected liberty interest, due

18   process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded

19   notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the

20   reasons for the denial.  Id. at 1390 (quoting Greenholtz, 442 U.S. at 16).  See also Morrissey v.

21   Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving

22   parole issues).  Violation of state mandated procedures will constitute a due process violation

23   only if the violation causes a fundamentally unfair result.  Estelle, 502 U.S. at 65.

24          In California, the setting of a parole date for a state prisoner is conditioned on a

25   finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The

26   requirements of due process in the parole suitability setting are satisfied "if some evidence

9

1  supports the decision." McQuillion, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S.

2  445, 456 (1985)); Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Perveler v. Estelle,

3  974 F.2d 1132, 1134 (9th Cir. 1992)). For purposes of AEDPA, Hill's "some evidence" standard

4  is "clearly established" federal law. Sass, 461 F.3d at 1129 (citing Hill, 472 U.S. at 456). "The

5  'some evidence' standard is minimally stringent," and a decision will be upheld if there is any

6  evidence in the record that could support the conclusion reached by the factfinder. Powell, 33

7  F.3d at 40 (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v. McCarthy,

8  801 F.2d 1080, 1105 (9th Cir. 1986). However, "the evidence underlying the board's decision

9  must have some indicia of reliability." Jancsek, 833 F.2d at 1390. See also Perveler, 974 F.2d at

10  1134. Determining whether the "some evidence" standard is satisfied does not require

11  examination of the entire record, independent assessment of the credibility of witnesses, or the

12  weighing of evidence. Toussaint, 801 F.2d at 1105. The question is whether there is any reliable

13  evidence in the record that could support the conclusion reached. Id.

14         In recent years the Ninth Circuit Court of Appeals has been called upon to address

15  the issues raised by petitions such as that now pending before this court in three significant cases,

16  each of which will be discussed below. First, in Biggs, the Ninth Circuit Court of Appeals

17  recognized that a continued reliance on an unchanging factor such as the circumstances of the

18  offense could at some point result in a due process violation. That holding has been

19  acknowledged as representing the law of the circuit. Irons v. Carey, 505 F.3d 846, 853 (9th Cir.

20  2007); Sass, 461 F.3d at 1129. While the court in Biggs rejected several of the reasons given by

21  the Board for finding the petitioner unsuitable for parole, it upheld three: (1) petitioner's

22  commitment offense involved the murder of a witness; (2) the murder was carried out in a

23  manner exhibiting a callous disregard for the life and suffering of another; and (3) petitioner

24  could benefit from therapy. Biggs, 334 F.3d at 913. However, the court in Biggs cautioned that

25  continued reliance solely upon the gravity of the offense of conviction and petitioner's conduct

26  /////

1  prior to committing that offense in denying parole could, at some point, violate due process.  In

2  this regard, the court observed:

> As in the present instance, the parole board's sole supportable
> reliance on the gravity of the offense and conduct prior to
> imprisonment to justify denial of parole can be initially justified as
> fulfilling the requirements set forth by state law.  Over time,
> however, should Biggs continue to demonstrate exemplary
> behavior and evidence of rehabilitation, denying him a parole date
> simply because of the nature of his offense would raise serious
> questions involving his liberty interest in parole.

8  Id. at 916.  The court also stated that "[a] continued reliance in the future on an unchanging

9  factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the

10  rehabilitative goals espoused by the prison system and could result in a due process violation."

11  Id. at 917.

12        In Sass, the Board found the petitioner unsuitable for parole at his third suitability

13  hearing based on the gravity of his offenses of conviction in combination with his prior offenses.

14  461 F.3d at 1126.  Citing Biggs, the petitioner in Sass contended that reliance on these

15  unchanging factors violated due process.  The court disagreed, concluding that these factors

16  amounted to "some evidence" to support the Board's determination.  Id. at 1129.  The court

17  provided the following explanation for its holding:

> While upholding an unsuitability determination based on these
> same factors, we previously acknowledged that "continued reliance
> in the future on an unchanging factor, the circumstance of the
> offense and conduct prior to imprisonment, runs contrary to the
> rehabilitative goals espoused by the prison system and could result
> in a due process violation." Biggs, 334 F.3d at 917 (emphasis
> added).  Under AEDPA it is not our function to speculate about
> how future parole hearings could proceed.  Cf. id.  The evidence of
> Sass' prior offenses and the gravity of his convicted offenses
> constitute some evidence to support the Board's decision.
> Consequently, the state court decisions upholding the denials were
> neither contrary to, nor did they involve an unreasonable
> application of, clearly established Federal law as determined by the
> Supreme Court of the United States.  28 U.S.C. § 2254(d).

26  Id.

11

1    In <u>Irons</u> the Ninth Circuit sought to harmonize the holdings in <u>Biggs</u> and <u>Sass</u>,

2    stating as follows:

3    Because the murder Sass committed was less callous and cruel than
     the one committed by Irons, and because Sass was likewise denied
4    parole in spite of exemplary conduct in prison and evidence of
     rehabilitation, our decision in <u>Sass</u> precludes us from accepting
5    Iron's due process argument or otherwise affirming the district
     court's grant of relief.

6
     We note that in all the cases in which we have held that a parole
7    board's decision to deem a prisoner unsuitable for parole solely on
     the basis of his commitment offense comports with due process,
8    the decision was made before the inmate had served the minimum
     number of years required by his sentence. Specifically, in <u>Biggs</u>,
9    <u>Sass</u>, and here, the petitioners had not served the minimum number
     of years to which they had been sentenced at the time of the
10   challenged parole denial by the Board. <u>Biggs</u>, 334 F.3d at 912;
     <u>Sass</u>, 461 F.3d 1125. All we held in those cases and all we hold
11   today, therefore, is that, given the particular circumstances of the
     offenses in these cases, due process was not violated when these
12   prisoners were deemed unsuitable for parole prior to the expiration
     of their minimum terms.

13
     Furthermore, we note that in <u>Sass</u> and in the case before us there
14   was substantial evidence in the record demonstrating rehabilitation.
     In both cases, the California Board of Prison Terms appeared to
15   give little or no weight to this evidence in reaching its conclusion
     that Sass and Irons presently constituted a danger to society and
16   thus were unsuitable for parole. We hope that the Board will come
     to recognize that in some cases, indefinite detention based solely
17   on an inmate's commitment offense, regardless of the extent of his
     rehabilitation, will at some point violate due process, given the
18   liberty interest in parole that flows from the relevant California
     statutes. <u>Biggs</u>, 334 F.3d at 917.

19

20   <u>Irons</u>, 505 F.3d at 664-65.

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

1    After taking into consideration the Ninth Circuit decisions in <u>Biggs</u>, <u>Sass</u>, and

2  <u>Irons</u>[1], and for the reasons set forth below, this court concludes that petitioner is not entitled to

3  federal habeas relief with respect to his due process challenge to the September 24, 2003 Board

4  decision denying him parole.

5    There is no dispute that petitioner was provided advance written notice of his

6  parole hearing, an opportunity to be heard and to submit materials for the Board's consideration,

7  and access to the materials submitted to the Board for its consideration by others.  Therefore, the

8  question before this court is whether the BPT's decision that petitioner was unsuitable for parole

9  was supported by "some evidence" that bore "indicia of reliability."  <u>Jancsek</u>, 833 F.2d at 1390.

10    In denying petitioner a parole date the panel based its decision on the fact that

11  petitioner's commitment offense was "carried out in an especially violent and brutal manner,"

12  and "in a manner which demonstrates a disregard for human life."  (Answer, Ex. B at 33.)  In

13  California, the heinous or cruel nature of the commitment offense is a valid basis for an

14  unsuitability finding by the Board.  Cal. Code Regs. tit. 15 § 2402(c) (1); <u>In re Seabock</u>, 140 Cal.

15  App. 3d 29, 35 (1983) (finding that the nature of an inmate's commitment offense is a

16  circumstance supporting finding of unsuitability for parole).  The Board further found that

17  petitioner had "an escalating pattern of criminal conduct and violence" and that he suffered from

18  a lifelong problem with drug use.  (Answer, Ex. B at 34.)  The Board concluded that petitioner

19  had not sufficiently participated in self-help because he had only participated in Narcotics

20  Anonymous and not in any other available "self-help" programs.  (<u>Id</u>.)  The Board also noted that

21  petitioner did not have "acceptable employment plans."  (<u>Id</u>.)  The record reflects that there was

22

23    [1]  Even more recently a panel of the Ninth Circuit in <u>Hayward v. Marshall</u>, 512 F.3d 536,
24  546-47 (9th Cir. 2008), determined that under the "unusual circumstances" of that case the
   unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some
25  evidence" supporting the governor's decision to reverse a parole grant on the basis that the
   petitioner would pose a continuing danger to society.  However, on May 16, 2008, the Court of
26  Appeals decided to rehear that case en banc.  <u>Hayward v. Marshall</u>, 527 F.3d 797 (9th Cir. 2008).
   Therefore, the panel decision in <u>Hayward</u> is no longer citable precedent.

1   some reliable evidence before the Board to support each of these factors and upon which the

2   Board could have based its parole decision.[2]

3              Further, and perhaps most importantly, at the time of his September 24, 2003

4   hearing, petitioner had not yet served the minimum number of years required by his sentence.

5   Pursuant to the holding in Irons, petitioner's right to due process was not violated when he was

6   deemed unsuitable for parole prior to the expiration of his minimum term. Irons, 505 F.3d at

7   665.  The facts in this case are similar to those in Sass, where the petitioner was found unsuitable

8   for parole at his third suitability hearing held prior to his service of the minimum term, based

9   solely on his commitment offense and prior criminal history.  In Sass the Ninth Circuit concluded

10  that in the context presented in that case these factors amounted to "some evidence" to support

11  the Board's determination.  Sass, 469 F.3d at 1129.  After a review of the record in this case, and

12  in accordance with the authorities discussed above, the court concludes that the BPT's September

13  24, 2003 decision that petitioner was unsuitable for parole at that time did not violate his due

14  process rights.  Accordingly, the state court decision denying petitioner's due process claim is not

15  contrary to or an unreasonable application of federal law and may not be set aside.[3]

16  _____

17     [2]  The Board did not suggest that petitioner get therapy, but rather that he participate in
    "self-help" in order to "face, discuss, understand, and cope with stress in a nondestructive

18  manner."  (Id. at 34-35.)  Presumably, the Board was referring to other forms of self-help besides
    Narcotics Anonymous, which petitioner has participated in.  (Id. at 34.)  The Board also found

19  that petitioner had an "unstable social history."  (Id.)  This latter factor cited by the Board does
    not find support in the record before this court.

20     [3]  Petitioner has made several claims that the Board's decision finding him unsuitable for

21  parole violated California law.  Specifically, he contends that: (1) the Board is failing to set
    parole release dates in a manner that provides uniform terms for inmates who have committed

22  offenses of similar gravity and magnitude in violation of California law; (2) he has already served
    more time than California law requires for his crime; and (3) he has served more time in prison

23  than other inmates who have committed similar or more serious crimes, including his two co-
    defendants.  Petitioner notes that both of his co-defendants, including the person who actually

24  shot the victim, have been found suitable for parole.  (P&A at 11-12.)  He also argues that the
    BPT is required to adhere to a certain formula (the "Matrix System") in setting his release date.

25  Many of these arguments have been rejected by the California Supreme Court in In re
    Dannenberg, 34 Cal. 4th 1061, 1083, 1098 (2005) (holding that the Board is not required to refer

26  to its sentencing matrices or to compare other crimes of the same type in deciding whether a
    prisoner is suitable for parole).  More importantly for purposes of this federal habeas corpus

C. Cruel and Unusual Punishment

Petitioner also claims that the length of his sentence, and particularly the Board's failure to find him suitable for parole, violates the Eighth Amendment proscription against cruel and unusual punishment. (P&A at 23-26.) Petitioner argues that the uncertain nature of the length of his ultimate sentence causes him mental anguish and that the time he has already served is not only disproportionate to his crime, but is longer than the sentences served by his co-defendants. (Id.; Traverse at 10.) He also argues that the Board has improperly "de facto" set his term at life. (P&A at 25.)

In Lockyer v. Andrade, 538 U.S. 63 (2003), the United States Supreme Court found that in addressing an Eighth Amendment challenge to a prison sentence, the "only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear and applicable only in the 'exceedingly rare' and 'extreme' case." Id. at 73 (citing Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem v. Helm, 463 U.S. 277, 290 (1983); and Rummel v. Estelle, 445 U.S. 263, 272 (1980)). The Supreme Court concluded that two consecutive twenty-five years to life sentences with the possibility of parole, imposed in that case under California's Three Strikes Law following two petty theft convictions with priors, did not amount to cruel and unusual

_____

action, petitioner has not cited any federal law for the proposition that the Due Process Clause requires a state parole board to either set a parole date where the Board believes a prisoner poses an unreasonable risk of danger to society, engage in a comparative analysis before denying parole suitability, or to set a parole date within a state's "matrix." Petitioner's arguments that the state court erred in applying state sentencing laws to his release date are not cognizable in this federal habeas corpus proceeding. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Petitioner also contends that the regulations the Board uses to make its decision contain vague criteria for determining parole suitability, such as the phrases "especially violent," "brutal manner," "dispassionate manner," and "demonstrates a disregard for human life," and that this vagueness violates his right to due process under the U.S. Constitution. (P&A at 16-17.) Similar claims have been rejected by several courts. See Ortiz v. Ayers, C 06-5368 RMW (PR), 2008 WL 2051051, *5 (N.D. Cal. May 13, 2008); Stiner v. Ayers, C 05-5400 JF PR, 2008 WL 906161, *5 (N.D. Cal. Mar 31, 2008); Neblett v. Ornoski, C 05-4228SI (PR), 2008 WL 698477, *9 (N.D. Cal. Mar 14, 2008). Based on the reasoning of those cases, this court also rejects petitioner's claim that the regulatory language used by the Board is unconstitutionally vague.

1   punishment.  Andrade, 538 U.S. at 77; see also Ewing v. California, 538 U.S. 11 (2003) (holding

2   that a sentence of twenty-five years to life imposed for felony grand theft under California's

3   Three Strikes law did not violate the Eighth Amendment).

4          Following the decision in Andrade the United States Court of Appeals for the

5   Ninth Circuit has held that a third strike sentence of twenty-five years to life in prison for a third

6   shoplifting offense, a "wobbler" under state law[4], constituted cruel and unusual punishment.

7   Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004).  In so holding, the court relied upon the limited

8   and non-violent nature of the petitioner's prior criminal history and the fact that the petitioner's

9   only prior period of incarceration had been a single one-year jail sentence.  Id. at 768-69.

10  Thereafter, in Rios v. Garcia, 390 F.3d 1082 (9th Cir. 2004), the court distinguished the holding

11  in Ramirez from the situation it confronted, finding that the petitioner in Rios had a "lengthy

12  criminal history," had "been incarcerated several times," and that the prior strikes used to

13  enhance his sentence had "involved the threat of violence."  Id. at 1086.

14          This court finds that in this case petitioner's sentence does not fall within the type

15  of "exceedingly rare" circumstance that would support a finding that his sentence violates the

16  Eighth Amendment.  Petitioner was convicted of first degree murder and possession of heroin for

17  sale.  In view of the decisions noted above, petitioner's sentence is not grossly disproportionate

18  to these crimes.  See Harmelin, 501 U.S. at 1004-05 (life imprisonment without possibility of

19  parole for possession of 24 ounces of cocaine raises no inference of gross disproportionality).

20  The state courts' rejection of petitioner's Eighth Amendment claim was neither contrary to, nor

21  an unreasonable application of clearly established federal law.  Therefore, petitioner is not

22  entitled to relief on his Eighth Amendment claim.

23  /////

24  /////

25

26      [4]  A "wobbler" is an offense that can be punished as either a misdemeanor or a felony
    under applicable law.  See Ferreira v. Ashcroft, 382 F.3d 1045, 1051 (9th Cir. 2004).

1  D.  Breach of Plea Agreement

2        Petitioner next claims that the BPT's failure to find him suitable for parole and its

3  refusal to set a release date has resulted in a breach of his plea agreement.  (P&A at 30-32.)

4  Petitioner states that he understood when he entered into his plea agreement that he would

5  receive a parole date at his minimum eligible parole date (MEPD) of February 15, 2001.  (Id. at

6  31.)  In this regard, petitioner explains:

7          At the time of accepting this plea based upon all available
information, petitioner was told and expected that if he made

8          efforts towards reforming himself, demonstrated a sincere
appreciation of the wrongfulness of his crime, learned marketable

9          skills, and reduced his classification score from 100 to 0, a parole
board conscientiously exercising its discretion would set a parole

10         date at his MEPD.  Otherwise there would be no benefit to
petitioner in pleading.

11

12 (Id. at 29.)  Petitioner argues that he "has been eligible for parole since 2001, the continued

13 denial of parole has breached petitioner's plea agreement, petitioner is entitled to relief."  (Id. at

14 32.)

15       Plea agreements are contractual in nature and are construed using the ordinary

16 rules of contract interpretation.  United States v. Transfiguracion, 442 F.3d 1222, 1228 (9th Cir.

17 2006); Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003).  Courts will enforce the literal

18 terms of the plea agreement but must construe any ambiguities against the government.  United

19 States v. Franco-Lopez, 312 F.3d 984, 989 (9th Cir. 2002).  "[W]hen a plea rests in any

20 significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part

21 of the inducement or consideration, such promise must be fulfilled."  Santobello v. New York,

22 404 U.S. 257, 262 (1971).  In construing a plea agreement, this court must determine what

23 petitioner reasonably believed to be its terms at the time of the plea.  United States v. Anderson,

24 970 F.2d 602, 607 (9th Cir. 1992), as amended, 990 F.2d 1163 (9th Cir. 1993).

25       Petitioner has failed to demonstrate that the Board's decision finding him

26 unsuitable for parole violated the terms of his plea agreement.  Petitioner states that he believed

17

1  he would receive a parole date on his MEPD.  However, there is nothing in the record which

2  reflects a promise by the prosecutor that petitioner would be released or granted parole at any

3  particular time or before the expiration of his life term.  This court may not grant habeas relief

4  based upon petitioner's unsupported belief that he would be released at a time certain.  The

5  decision of the state courts rejecting petitioner's claim in this regard is not contrary to or an

6  unreasonable application of federal law as set forth above, nor is it based on an unreasonable

7  determination of the facts of this case.  Accordingly, petitioner is not entitled to relief on this

8  claim.

9  E.  No Parole Policy

10       Petitioner also claims that he was denied parole as a result of the Board's

11  application of a "no parole policy" in effect during the administrations of former Governor Gray

12  Davis for prisoners sentenced to an indeterminate life term.  (P&A at 33-39.)  Petitioner argues.

13  "The former Governor of California and the Board of Prison Terms were practicing a policy of

14  no parole for lifers at the time of the challenged hearings, a violation of petitioner's

15  Constitutional rights."  (Id. at 33.)  In support of this claim, petitioner has offered argument and

16  documentary evidence attempting to show that invalid parole policies and practices existed under

17  former Governor Davis.

18       The parole denial challenged in this case occurred when Gray Davis was

19  Governor of California.  The evidence submitted by petitioner demonstrates that former

20  Governor Davis vetoed parole recommendations for virtually every prisoner convicted of murder,

21  with rare exceptions.  The Ninth Circuit Court of Appeal has acknowledged that California

22  inmates have a due process right to parole consideration by neutral decision-makers.  See

23  O'Bremski v. Maas, 915 F.2d 418, 422 (9th Cir. 1990) (an inmate is "entitled to have his release

24  date considered by a Board that [is] free from bias or prejudice").  Accordingly, parole board

25  officials owe a duty to potential parolees "to render impartial decisions in cases and controversies

26  that excite strong feelings because the litigant's liberty is at stake."  Id. (quoting Sellars v.

18

1  Procunier, 641 F.2d 1295, 1303 (9th Cir. 1981)).  Indeed, "a fair trial in a fair tribunal is a basic

2  requirement of due process."  In re Murchison, 349 U.S. 133, 136 (1955).

3            Based on the authorities cited above, petitioner is correct that he was entitled to

4  have his release date considered by a Board that was free of bias or prejudice.  However, even

5  assuming arguendo that petitioner was found unsuitable for parole in 2003 based on a "no

6  parole" policy for life prisoners then in effect, petitioner has failed to show prejudice.

7  Respondent has submitted evidence that petitioner had another parole suitability hearing on

8  November 27, 2007, at which he was again found unsuitable for parole.  (See "Response to July

9  2, 2008 Court Order," filed on July 9, 2008).  Gray Davis was not the Governor of California at

10 the time of the November 27, 2007 suitability hearing, and petitioner has offered no evidence

11 suggesting that the Board was operating under a no-parole policy for life prisoners after Governor

12 Davis left office.  Therefore, petitioner has already received all the relief to which he would be

13 entitled with respect to this claim: a new parole hearing before an unbiased Board panel.  Under

14 these circumstances, petitioner has failed to establish that the outcome of a new suitability

15 hearing would have changed before a different panel.  Accordingly, petitioner is not entitled to

16 relief on this claim.  See O'Bremski, 915 F.2d at 423 (parolee failed to establish prejudice where

17 a neutral parole panel at a new hearing would reach the same outcome).

18                                        CONCLUSION

19            Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

20 a writ of habeas corpus (Doc. No. 1) be denied.

21            These findings and recommendations are submitted to the United States District

22 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

23 days after being served with these findings and recommendations, any party may file written

24 objections with the court and serve a copy on all parties.  Such a document should be captioned

25 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

26 shall be served and filed within ten days after service of the objections.  The parties are advised

1    that failure to file objections within the specified time may waive the right to appeal the District

2    Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3    DATED: August 21, 2008.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

7    DAD:8
carl1796.hc